(No. 20676.—

NELLIE T. WALSH *et al.* Appellants, *vs.* THE STOCK YARDS TRUST AND SAVINGS BANK *et al.* Appellees.

*Opinion filed October 23, 1931.*

LOUIS GREENBERG, HENRY BLECH, and HERMAN HERSON, for appellants.

KELLY & MURPHY, McCULLOCH & McCULLOCH, and WINSTON, STRAWN & SHAW, (CHRISTOPHER G. KINNEY, and GROVER C. McLAREN, of counsel,) for appellees.

Mr. JUSTICE HEARD delivered the opinion of the court:

This cause was before this court at a previous term and a decree of the circuit court therein was reversed and the cause remanded generally. For a full statement of the

pleadings and proceedings in the cause prior to that time reference is made to *Walsh* v. *Stock Yards Trust and Savings Bank,* 340 Ill. 57. After the remandment of the cause to the circuit court appellants filed an amended bill of complaint in which their tender previously made was not included, and thereafter appellees Chan C. Foster and Michael J. Flynn filed an amendment to their answer, in which they withdrew their tender to re-convey the premises upon the payment to them of the moneys paid by them on account of the purchase price and in the maintenance and operation of the property. The cause was heard in open court and a decree was entered dismissing appellants' amended bill for want of equity and adjudging them to pay all of the costs, including the costs theretofore incurred in the Supreme Court. From this decree they have appealed to this court.

The court in its decree found, among other things, that while at the time of her transactions with appellees Mary F. Walsh was a woman of eighty-two or eighty-three years of age and feeble physically, she could comprehend and act rationally in the transactions in which she was engaged; that she at all times understood the nature of her business and the management of the property in question and other business and could understand the effect of what she was doing and could exercise her will with reference thereto and was competent and sane; that in the negotiations leading up to her making the instruments in question she and appellants each participated in the negotiations; that the contract for the sale and purchase of the premises in question between her and Flynn and Foster was submitted to her in the presence of appellants and read to them, and that a discussion resulted with reference to the amount of $15,000 cash and the other terms of the contract; that on August 27 an account was had between the parties, including appellants, and an account was stated; that it was agreed that $14,700 was due Mrs. Walsh; that said sum was paid her by check, which was by her endorsed and placed to her

credit in the bank, where it remained until after her death; that in the administration of her estate this sum of $14,700 was distributed to appellants and full distribution of her estate made; that the reasonable value of the 90-apartment building, Nos. 5659-5669 Washington boulevard, in the city of Chicago, on July 15, 1927, did not exceed the sum of $410,000; that the sale of the premises was for a fair consideration and was without fraud or misrepresentation on the part of appellees; that all of the facts and circumstances in connection with the sale of her premises to Flynn and Foster were known to and understood by Mrs. Walsh; that no false representations and promises were made to her; that she fully understood the nature of the transactions and her actions were not influenced by any threats or improper conduct on the part of appellees, but the consideration paid by Flynn and Foster was fair and adequate and that Mrs. Walsh received during her lifetime the full consideration for the execution by her of her deed of conveyance. These findings were fully supported by the evidence. The chancellor saw and heard the witnesses, and in this case we would not be justified in setting aside his finding of fact based on their testimony.

It is contended by appellants that the Stock Yards Trust and Savings Bank was not authorized by law to hold the title of the property in question in trust for Flynn and Foster. Section 5 of article 11 of the constitution provides for the creating of corporations with banking powers by act of the General Assembly, to go into effect after the same shall be submitted to a vote of the people at the general election next succeeding the passage of the same, upon receiving the approval of a majority of all the votes cast at such election for or against such law. Originally banking power was very limited and consisted of receiving money, in exchange for which promissory notes were given, payable to the bearer on demand. (*Auten* v. *United States Nat. Bank,* 174 U. S. 125.) Modern bankers have extended

their operations far beyond the original scope of banking powers. Banks frequently act as trustees by appointment of courts or under wills or deeds, and the right of banks in this State to act as such trustees is recognized in *Wedesweiler* v. *Brundage,* 297 Ill. 228. Section 1 of the Banking act specifically gives to banks the power to accept and execute trusts.

It is claimed by appellants that the Stock Yards Trust and Savings Bank could not hold the title as trustee because there had been no compliance with the Statute of Frauds, for the reason that there was no writing executed by Mary F. Walsh creating the Stock Yards Trust and Savings Bank trustee. Mrs. Walsh did not create the Stock Yards Trust and Savings Bank a trustee but it became a trustee by operation of law. When the entire purchase price of property is paid by one person and title taken in another a resulting trust arises in favor of the one furnishing the consideration unless the contrary intention of the parties is shown. (*Downs* v. *Mooney,* 339 Ill. 606.) If the fact exists, by mere operation of law a trust is raised in favor of the party whose money was paid to purchase the land at the instant of the taking of the title. While neither an express nor a resulting trust can be created by parol agreement, yet where the transaction is such that at the moment the title passes a resulting trust would arise in the absence of such parol agreement, such agreement will not prevent a trust resulting. (*Mercury Club* v. *Keillen,* 323 Ill. 24.) In this case not only did the trust arise by operation of law, but it was adequately manifested by writing signed by the Stock Yards Trust and Savings Bank. The Statute of Frauds has no application to this case.

Other questions are argued *in extenso* which we do not deem it necessary to discuss, as they relate to questions of fact found adversely to appellants by the chancellor, and we have held that we would not be justified in reversing his findings of fact.

The costs in the Supreme Court on the former appeal should not have been adjudged against appellants, as such costs had been adjudged against appellees by this court.

The decree of the circuit court is affirmed except as to the costs of the former appeal, and the portion of the decree with reference to such costs is reversed.

*Decree reversed in part.*