(No. 27913.—

FRANCES MAY MAURICAU, Appellant, *vs.* A. I. HAUGEN, Appellee.

*Opinion filed May 16, 1944—Rehearing denied September 18, 1944.*

J. M. Powers, of Pekin, for appellant.

Harold H. Kuhfuss, and Velde & Prettyman, both of Pekin, for appellee.

Mr. Justice Gunn delivered the opinion of the court:

Appellant, Frances May Mauricau, filed her complaint in equity in the circuit court of Tazewell county to enjoin appellee, A. I. Haugen, and the sheriff of Tazewell county from selling the separate real estate alleged to belong to appellant to satisfy a judgment against her husband Van Buren Mauricau. At the time the execution was issued, title to one half of the real estate involved appeared of record in the name of Van Buren Mauricau, her husband, but appellant contends that equitably such interest was hers by rea-

son of a resulting or constructive trust; that she had possession of the property, and that the debt of the husband having been incurred prior to her marriage, her rights as equitable owner are prior to those of the execution creditor, because he could have a lien only upon the property actually owned by her husband, Van Buren Mauricau. A temporary injunction was issued, the cause referred to a master in chancery, who reported the evidence and recommended that the plaintiff be denied relief, which report was approved by the court, and the complaint dismissed for want of equity. A freehold is involved inasmuch as the decree of the court had the effect of holding that appellant's husband had a one-half interest in her real estate, liable to being sold to pay his separate debts.

The judgment against the husband, Van Buren Mauricau, grew out of a breach of contract entered into with A. I. Haugen. At the time the contract was made in August, 1930, Mauricau was married to Jessie Mauricau. Appellant married Van Buren Mauricau April 22, 1933, after the death of Jessie Mauricau. Appellant had been employed for a number of years at a salary ranging from $165 to $175 per month, and also acquired certain properties by devise from her uncle. In 1936 and 1937 she acquired title to seven separate parcels of real estate in the village of Morton, in said county, for which she paid the total consideration and took title in her own name. January 24, 1941, she purchased an additional tract, referred to herein as the Smith property, title to which was taken in the name of herself and her husband, without her knowledge or consent, but the entire consideration was paid by appellant from her own funds. No part of the consideration for any of the properties above described was paid by Van Buren Mauricau.

November 7, 1938, the Adams Mercantile Company obtained a judgment against Van Buren Mauricau and the estate of his deceased wife for $1247.37, upon which exe-

cution was not issued, and on the same day appellee, A. I. Haugen, also obtained a judgment against the same parties for $5659.59. Appellant had no knowledge of this judgment until March or April, 1941. May 6, 1941, execution was issued upon the Haugen judgment and the sheriff levied upon and advertised for sale an undivided one-half interest in the eight properties above referred to. The apparent interest of Van Buren Mauricau, which was assumed to be subject to sale, arose in the following manner: July 13, 1938, appellant and her husband executed and delivered to Johanna Heinson a warranty deed to the seven properties above described, which was filed for record July 19, 1938. By deed dated July 13, 1938, although actually made several days later, Johanna Heinson reconveyed the premises to Frances May Mauricau and Van Buren Mauricau, husband and wife, as joint tenants and not as tenants in common. This deed was filed for record October 11, 1940. By a writing dated July 13, 1938, signed by Frances May Mauricau and her husband, the transfer of real estate to Johanna Heinson and the conveyance back to husband and wife is recited, but it is recited that Van Buren Mauricau had no interest in the property, and was a grantee solely as trustee and agent of his wife. It then makes provision for a disposition of the property in the case of the death of the wife prior to her husband. A similar declaration with respect to the Smith property acquired January 24, 1941, was made in writing, and signed by appellant and her husband. Neither of these acknowledgements of trust upon the part of the husband was ever recorded.

The occasion for the transfer of the seven tracts to Johanna Heinson arose out of the fact she had become the surety on a replevin bond of appellant, who attempted to recover certain securities deposited by appellant with N. L. Rogers & Co., and also as security for a loan of $1500. Within a few days after the conveyance to Mrs. Heinson

had been made she was required to reconvey the property to appellant, the deed, however, not to be recorded until the liability upon the replevin bond had been satisfied.

The finding of the master is to the effect that the return deed executed by Johanna Heinson was not made on the same day as the conveyance to her but some three or four days later, and that it named appellant and her husband as joint-tenant grantees, without the knowledge or direction of appellant; that it was brought from the office of the attorney who prepared it to appellant by her husband. The master further finds that upon reading the deed, when handed to her by her husband, appellant was very much disturbed, and that shortly thereafter she went to the office of the attorney who had prepared the deed and inquired why her husband had been made grantee, and then took the matter up with her husband, resulting in both of them declaring in writing that the interest of the husband was that of a trustee, only. The master finds the Smith deed was made to appellant and her husband as joint tenants, but that appellant paid the entire consideration out of her funds. Appellant testified she never saw the deed until after it was recorded; that she did not give directions to have it so prepared, and did not know it was being so drawn, and upon discovery thereof immediately took the matter up with her husband, resulting in the declaration of trust by the latter. The master also finds that all of the business transacted with respect to the several properties, such as collecting the rents, making repairs, paying taxes and other expenses was handled solely by appellant, except in a few isolated instances where the husband collected rent. Other material facts for a proper decision of the case will be referred to in this opinion as occasion shall arise.

The appellant contends that under such facts the property sought to be levied upon is her separate estate; that she is not liable for any part of her husband's debts from

such estate; that appellee is not entitled to levy upon such property because Van Buren Mauricau did not have an interest therein at the time the judgments were procured against him; that the judgments and execution were only a lien upon his real interest and not his apparent interest. Also the facts disclose appellant was in possession of the property to such an extent that appellee was bound to ascertain the nature and character of her interest. The master made a finding that the transfer was presumptively a gift to the husband, which is assigned as error by appellant.

The appellee contends that the deed to Johanna Heinson was a fraudulent conveyance made for the purpose of delaying and defrauding creditors, and that he is entitled to rely upon the provisions of the statute that all deeds shall take effect and be in force from and after the time of filing for record as to all creditors and subsequent purchasers without notice; (Ill. Rev. Stat. 1943, chap. 30, par. 29;) that there was no resulting or constructive trust, but an express trust, which must be in writing, and was required to be recorded to give notice, and that the possession of the properties by appellant was insufficient to give appellee constructive notice.

The points raised require discussion of the applicability of several propositions of law, which will be taken up in their order. The wife has the right to own and control separate property, the control of which is given to her exclusively, without being subject to the debts of her husband. Section 5 of the Husband and Wife Act (Ill. Rev. Stat. 1943, chap. 68, par. 5,) expressly provides: "neither husband or wife shall be liable for the debts or liabilities of the other incurred before marriage, and * * * shall not be liable for the separate debts of each other." Section 9 of the same act provides that a wife may purchase, own, manage, sell and convey property to the same extent as her husband. While this statute was adopted as remedial of the policy of the common law, which for practical

purposes placed all of a wife's property under the control of the husband, frequently the rights in property as between them are not so easily determined. The relationship of husband and wife is one of such confidence and trust that transactions between them are scrutinized very closely.

This court has frequently had occasion to consider the rights between husband and wife where conveyance of property is made between them and a contention is made that a trust relationship is created. As a general proposition of law an unauthorized conveyance of one's property to another gives rise to an implied trust, whether it be designated constructive or resulting. (*White* v. *Cannon*, 125 Ill. 412; *Madison* v. *Madison*, 206 Ill. 534; *O'Donnell* v. *O'Donnell*, 303 Ill. 31.) This is especially true of conveyances between husband and wife, where we have held that if a husband obtains title to his wife's property without her consent and without consideration, equity will impose upon said title a trust for the wife's benefit. (*Miller* v. *Miller*, 266 Ill. 522; *Kern* v. *Beatty*, 267 Ill. 127.) It has been applied to other cases where a fiduciary relationship exists. *Kochorimbus* v. *Maggos*, 323 Ill. 510; *Steinmetz* v. *Kern*, 375 Ill. 616.

Under the undisputed facts in the present case the reconveyance of the seven tracts of land to appellant and her husband as joint tenants, without her knowledge or consent and without any consideration whatever, would undoubtedly raise an implied trust in her favor, and she would therefore own the legal title to one half, and the equitable title to the other one-half. As between husband and wife, the same is true with reference to the Smith property. She was entitled to have the entire legal title conveyed to her because she paid the entire consideration from her separate estate, and the unauthorized insertion of her husband's name in the deed of conveyance as joint grantee raised a trust in the wife's favor to the part thereof appearing in his name.

Had this been the entire transaction, with no questions arising out of the claims of the husband's creditors, the determination of the respective interests of the husband and wife in the property would be simple. It appears, however, without dispute, that appellant was greatly disturbed when she ascertained shortly after the delivery of the deeds from Mrs. Heinson and Eugene Smith that the title had been placed in herself and her husband as joint tenants. She immediately took the question up with her husband and with the attorney who had prepared the deed, and the discussion resulted in the preparation by Mrs. Mauricau of the instruments signed by both husband and wife, showing the interest of the husband to be that of a trustee.

The contention made by appellee is that these instruments constituted express trusts, and therefore, in order to be notice to creditors, required recording under the statute. Appellant, however, contends that the trust in her favor was created by the unauthorized insertion of her husband's name as co-grantee, and that the documents in question, even though they may constitute express trusts, do not destroy the pre-existing resulting or constructive trust. Reference to the language of one of the documents is sufficient to show the purpose thereof. The paper referring to the seven properties, after reciting the conveyance to Mrs. Heinson in the first instance and the ending of the liability for which she was surety on the replevin bond, recites: "And whereas the said Van Buren Mauricau has no real interest in said property and is made a party Grantee in the deed from Johanna Heinson to Frances May Mauricau and Husband solely as trustee and as agent for said Frances May Mauricau. It is, therefore, agreed that in case said deed back from Johanna Heinson to Frances May Mauricau should be recorded that the said Van Buren Mauricau shall have no real title or interest in said premises, excepting as Trustee and Agent for his wife, Frances May Mauricau, * * *." The document then makes provision for what

the rights of the husband and other heirs of Mrs. Mauricau would be in case she died before her husband.

It is contended by appellee that this constituted an express trust and one which governs the situation. This position is doubtless taken because it bears the same date as that of the deed executed by Mrs. Heinson. The finding of the master, however, is conclusive that it was made several days after appellant discovered the deed was in the joint name of herself and her husband, and was dated the same as the date of the deed, although in fact executed afterwards. The facts show appellant was not present when the deed from Mrs. Heinson was made, and the fact that it contained both names was not discovered by her until the husband brought the deed from the attorney's office. The implied trust in favor of the wife would therefore arise at the moment the title was improperly vested in the husband, without consideration, and without the consent of the wife. The trust documents executed would undoubtedly constitute express trusts, so the question as to the rights of third parties, such as appellee, depends in part upon deciding this contention.

It has been many times said that an implied trust does not depend upon agreements, as they must arise by operation of law. (Ill. Rev. Stat. 1943, chap. 59, sec. 9.) But that does not prevent an implied resulting or constructive trust being acknowledged or admitted in a separate writing or by parol evidence after the trust has arisen. Taking into consideration the established fact the deed to husband and wife was made without her authority and without consideration, it appears the writing was executed, within a few days after the wife's discovery, for the purpose of showing that the interest of the husband in the properties was exactly the same as that the law had created. It does not purport to destroy the trust already arising in favor of appellant. Under similar circumstances, we have held a parol agreement made at the time an implied trust arose

does not destroy it, but is evidence of the trust already existing. *Brennaman* v. *Schell,* 212 Ill. 356; *Walsh* v. *Stock Yards Trust and Savings Bank,* 345 Ill. 265; *Mercury Club* v. *Keillen,* 323 Ill. 24.

Thus, in *Walsh* v. *Stock Yards Trust and Savings Bank,* 345 Ill. 265, where a contract was made after the trust had arisen, the court said: "Where the transaction is such that at the moment the title passes a resulting trust would arise in the absence of such parol agreement, such agreement will not prevent a trust resulting. * * * In this case not only did the trust arise by operation of law, but it was adequately manifested by writing signed by the Stock Yards Trust and Savings Bank." And in *Kochorimbus* v. *Maggos,* 323 Ill. 510, the court said in respect to the same proposition: "yet where the transaction is such that at the moment the title passes either a resulting or constructive trust would arise in the absence of a parol agreement, such agreement will not prevent a trust arising. * * * The intention of the parties in the premises may be shown by proof of the parol agreement in accordance with which the title is taken." The facts and the acknowledgment in the instrument as to the Smith property are substantially the same in effect.

We are of the opinion that the moment the unauthorized deed conveying a half interest in the respective properties was delivered to the husband, without authority and without consideration, a resulting or constructive trust was raised in favor of appellant, and the subsequent documents did not operate to destroy it, but did have the effect of manifesting that the implied trust was in existence, even though as an express trust it could not be given effect because of failure to record. The finding of the master that the rights of appellant in the undivided one-half interest in the premises involved must rest upon and be determined by an express trust agreement, and the action of the trial court in approving the same, were erroneous as a matter

of law. As between appellant and her husband, the former had an equitable title to the property involved in this case, but this does not fully determine the rights of appellant as against those of appellee.

Before taking up the contentions of appellee, we are impelled to notice one of the findings of the master in chancery to the effect that a presumption arose in this case that the plaintiff intended to make a gift of an undivided one-half interest in said premises to her husband, Van Buren Mauricau, although he previously had found that the entire consideration for all of said properties had been paid by appellant, and no part thereof by her husband. The appellee cites no authority to sustain this finding. It was held in *Wright* v. *Wright*, 242 Ill. 71, that where the wife furnishes the purchase money and a deed is taken in the name of the husband, a presumption of gift or advancement to the husband by the wife does not arise; that the reason such a presumption arises where the husband makes the gift or advancement to the wife rests upon the legal obligation of the person making the gift to maintain the person in whose name the deed is taken, but that it does not apply where the wife furnished the consideration for the deed taken in the name of the husband.

The rule laid down in *Wright* v. *Wright* is followed in *Hinshaw* v. *Russell*, 280 Ill. 235; *Crawford* v. *Hurst*, 299 Ill. 503, and *Crawford* v. *Hurst*, 307 Ill. 243, the last case coming before this court a second time. In all of these cases it is distinctly held that no presumption of gift arises in such cases, and we can see no distinction between a conveyance of the entire interest in the property and that of a conveyance of a part interest in the property, where the entire consideration is paid by the wife. This conclusion of the master was contrary to the rule announced in the decisions of this court, and was erroneous as a matter of law.

The principal contention of appellee is that by an application of the Conveyance Act, (Ill. Rev. Stat. 1943,

chap. 30, par. 29,) and of the Judgments Act, (Ill. Rev. Stat. 1943, chap. 77, par. 1,) a one-half interest in the real estate involved stood of record in the name of Van Buren Mauricau, and that the appellee, Haugen, stood in the position of a *bona fide* purchaser for value without notice. Section 30 of the Conveyance Act is as follows: "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice; and all such deeds and title papers shall be adjudged void as to all such creditors and subsequent purchasers, without notice, until the same shall be filed for record."

Appellee, Haugen, contends he is entitled to the benefit of this statute, first, because the trust was an express trust and entitled to be recorded, and second, he was a creditor whose lien attached to the apparent interest of the husband. It is pointed out above we have held that the trust in favor of appellant was not created by the instruments in writing, but by the title being improperly placed in the husband's name, and that the so-called trust documents did not have the effect of destroying it. The question for determination therefore is whether, under section 30 of the Conveyance Act, the equitable interest of appellant in real estate can be levied upon and sold to pay debts of her husband, where title was improperly placed in his name and she was not a debtor to the judgment creditor.

This precise question seems to have been decided in *Sparrow* v. *Wilcox*, 272 Ill. 632, and *East St. Louis Lumber Co.* v. *Schnipper*, 310 Ill. 150. In the former case judgments were obtained against one Garrett in May, 1913. In December of the same year the plaintiffs sold and conveyed to Garrett certain real estate, and later filed a suit to set aside their conveyance as fraudulent. The judgment creditor of Garrett filed a cross bill relying upon section 30

of the Conveyance Act. This court held that while the plaintiffs had placed title to their land in the judgment debtor, and there was nothing of record to show their interest, nevertheless the judgment creditor could not acquire any greater rights in the real estate than the judgment debtor had, and said, in effect, that the application of section 30 was to a case where the judgment was rendered against the party owning the land and it was thereafter conveyed to another. In such case the judgment debtor would still have his rights to levy upon and sell the property. It was further held that the rights of the debtor under such conditions were governed by section 1 of the Judgments Act, which we will discuss hereafter.

It is clearly held in the *Sparrow case* that section 30 of the Conveyance Act is intended to apply where there is a judgment creditor and the judgment debtor has conveyed property to another person and the conveyance is not recorded. In such case the purchaser comes within the statute. In the case of *East St. Louis Lumber Co.* v. *Schnipper* we also construed the effect of section 30 of the Conveyance Act. The title to real estate was in a man named Reis. Judgment was obtained against him. The plaintiff filed a bill to set aside the judgment and levy, claiming a resulting trust in the property because it had furnished the money, and Reis was holding the title as trustee. In that case we said: "If the complainant had been permitted to do so and had proved the averments of its bill, it would have established the fact that M. C. Reis was the holder of the naked legal title to the real estate and complainant was the equitable owner, and the question would be whether such real estate could be taken for the debt of Reis. On that question it would make no difference whether or not Reis was entitled to retain the legal title as security against a possible contingent liability. The lien of an ordinary judgment is general and only extends to what the debtor has, subject to the equities in it at the

date of the judgment. Under that general rule the lien of a judgment or execution is limited to the actual interest the judgment debtor has in the property and does not attach to a mere naked legal estate when the entire equitable estate is vested in some third person."

It was further said in the *Schnipper case:* "There was no averment or claim, and there is no argument, that in this case there was any fraud or interference with an existing right of a judgment creditor or any other person, and there is no requirement that an equitable owner, by virtue of a resulting trust, shall proclaim to the world his ownership for the public information nor that a trustee shall be labeled for like purpose. The ruling of the chancellor that the real estate of the complainant could be taken for the debt of Reis because the public had no notice of the resulting trust was not in accordance with the law."

These cases settle adversely the claim of appellee under section 30. Appellee contends, however, that they do not apply to an express trust, and points out that in each of these two cases an implied trust involving fraud was involved. That is the precise situation here. Since we hold that the instruments which appellee claims constitute an express trust did not destroy the preceding implied trust, the present case comes squarely within the rule. As an implied trust, resulting or constructive, may also involve a species of fraud, whether it be deliberate or not, we conclude that the appellant, not being a debtor to appellee, Haugen, her equitable rights are not disturbed because the legal title, under the circumstances, appeared of record in the name of the actual judgment debtor, Van Buren Mauricau.

The cases cited by appellee as supporting his alleged right to sell appellant's equitable right to satisfy her husband's debt have no application, for they uphold creditors' rights against equitable interests in the following classes of cases: (a) where property is placed in the name of an-

other either directly, for purpose of obtaining credit, or where it results in a holding out of ownership with the same effect; (b) where a judgment debtor conveys property before the entry of a judgment but it is not recorded until afterwards; or (c) the conflicting rights between judgment creditor and mortgagees who have delayed in recording the instruments. The obvious difference between such situations and those present here is so elementary as to render discussion unnecessary.

In addition to the reasons we have thus set forth as showing how section 30 is not applicable, there is the further consideration of the effect of the possession of all of the premises upon the part of appellant. The facts are conclusive that appellant purchased the property, paid the taxes, executed leases, collected rents, made repairs, and did other acts as owner and possessor of the properties. The evidence shows her husband collected rents on two or three occasions, but only for the purpose of turning the rent over to his wife. However, the contention made by appellee is that joint possession is not sufficient to show open and exclusive possession necessary to constitute notice.

In *Farmers' Nat. Bank* v. *Sperling*, 113 Ill. 273, where title appeared in the name of joint tenants and one of them conveyed to the other, but the deed was not placed of record, a judgment was obtained against the one who sold his interest, after the interest had been sold. A bill was brought to set aside the judgment and sale. It was held that the possession of the cotenant was notice to the judgment creditor of every interest he had in the property, legal or equitable. This case was followed in *VanGundy* v. *Tandy*, 272 Ill. 319, where one cotenant had conveyed to another and the deed was not recorded, and it was again held that his possession was binding and prior to the rights of judgment creditors of the one who had disposed of his interest, and that general creditors were bound to inquire by what right the possession was held. It also comments

upon the fact that, while the rule is different in other States, it has been the settled rule of Illinois since *Farmers Nat. Bank* v. *Sperling,* 113 Ill. 273. Other applications of the rule are to be found in *German-American Nat. Bank* v. *Martin,* 277 Ill. 629, and *Gallagher* v. *Northrup,* 215 Ill. 563.

Under the evidence in this case, even though the judgment against Van Buren Mauricau had been obtained after the title to a one-half interest was apparently vested in him, the creditor would still have been bound to ascertain the rights of one who appeared to have full possession and control of the property.

We now come to appellee's claim he is entitled to the benefit of section 1 of the Judgments Act, which reads as follows: "A judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained, situated within the county for which the court is held, from the time the same is rendered or revived, for the period of seven years, and no longer." We have frequently held that under this section the interest of the judgment debtor, to which the lien attaches, and which may be sold on execution, is the actual interest he has in the property. In *Sparrow* v. *Wilcox,* 272 Ill. 632, above referred to, and where the situation of the title was like that appearing in this case, we said: "It is undoubtedly true that a judgment will attach to after-acquired real estate of a judgment debtor, but the question in this case is simply whether the judgment creditor in such case takes his judgment lien subject to existing equities against the judgment debtor or not. No decisions of this court have been cited in which the exact question involved has been passed upon, and no reason has been given, nor does any occur to us, why a judgment creditor under circumstances similar to those in the case at bar should be given any greater rights in the property of a judgment debtor than the judgment debtor himself has. If a proper case arose under

which the grantor in a deed would be entitled to have the deed set aside as against the grantee and those claiming under him, it is difficult to understand why a judgment creditor having a judgment of record long prior to the date of the deed would have any greater rights in the premises than the judgment debtor himself or his grantees."

In *East St. Louis Lumber Co.* v. *Schnipper*, 310 Ill. 150, it was held the equitable interests of the beneficiary of a resulting trust are not subject to execution and sale for the debt of the trustee. The last and clearest announcement of the right of a judgment creditor called to our attention is *Sturdyvin* v. *Ward*, 336 Ill. 594. In that case two persons were co-owners as tenants in common of a tract of land. A mortgage signed by both was a lien on the land, but the debts represented by it were separate debts, although appearing in the mortgage as that of both, and the contention was made that a person having the right of a judgment debtor had the right to have it considered as a joint debt, whereby it would lessen the lien against the interests of the judgment debtor. In that case we held that the lien of the ordinary judgment is general, and extends only to the property right which the debtor owns in the premises, subject to the equities in it at the time of the judgment, and that it is limited to the actual interest of the judgment debtor; and that, taking into consideration section 30 of the Conveyance Act, the rights of creditors applied only to such equities of the judgment debtor as are evidenced by instruments required to be recorded. This would appear to conclude appellee from satisfying his debt out of property equitably owned by appellant.

It is contended, however, by appellee that the conveyance by appellant to Mrs. Heinson was fraudulent, and made with intent to hinder and delay creditors of appellant. This contention cannot be sustained. The execution of a $12,000 bond and the loan of $1500 was a sufficient consideration. Moreover, the evidence shows Mrs.

Mauricau had ample assets to satisfy any obligation she might have from other property, and beyond all of that, Haugen, appellee, was not a creditor of appellant. It has been frequently held that before one can take advantage of the statute permitting a deed to be set aside as in fraud of creditors the person assailing the transaction must be the creditor of the person so transferring property. (*Campbell & Zell Co.* v. *Ross,* 187 Ill. 553; *Chicago Daily News Co.* v. *Siegel,* 212 Ill. 617; *Eckhart* v. *Burrell Mfg. Co.* 236 Ill. 134.) The transactions of which appellee complains did not injure him or change in the slightest degree the rights he had against Van Buren Mauricau. This contention, if true, could be invoked only by one who was a creditor of appellant.

The claim is also made that appellant did not call certain witnesses to corroborate her testimony, and therefore the presumption arises that such testimony would be adverse to her, and that the trust is therefore not shown to have been proved by clear and convincing evidence. The testimony of appellant was clear and convincing, and supported by a large number of documents, and was not in any way disputed by appellee, except by such question as he could raise by argument or presumption. A presumption in itself is not evidence, and we have frequently held that a resulting or constructive trust may be established by the testimony of one witness. *Jones* v. *Felix,* 372 Ill. 262.

The master heard the testimony and made findings of fact sufficient to establish the trust in this case. It was the conclusion of law that he drew from the facts that was erroneous. Many other cases are cited by both appellant and appellee, all of which we have examined with care, but to analyze which would unduly prolong this opinion. It is sufficient to say the evidence discloses beyond any question that appellant was not indebted to appellee; that the property involved was her separate property; that title was placed in the name of herself and her husband

as joint tenants, without her knowledge or consent, and without the payment of any consideration, creating an implied trust in such interests so improperly transferred; that she took prompt steps to obtain an acknowledgment of such holding as trustee by her husband, and that appellee has not, by the transaction, been deprived of any security belonging to the husband out of which he was entitled to enforce his judgment.

The conclusions of law by the master, and approved by the court, that a trust did not result in favor of appellant, and that she had made a gift of the interests in the land involved to her husband, and that appellee was entitled to satisfy the husband's debt out of the wife's property were clearly wrong.

The decree of the circuit court of Tazewell county is accordingly reversed and the cause remanded, with directions to enter a decree granting the relief prayed for by appellant.

*Reversed and remanded, with directions.*