Margaret L. Kurtz, Appellant, v. Peter Kurtz, Appellee.

Gen. No. 46,767.

First District, Third Division.
May 23, 1956.
Released for publication June 13, 1956.

Frederick J. Bertram, and John E. Erickson, both of Chicago, for plaintiff-appellant; Tenney and Dahman, and Robert L. Smith, all of St. Louis, Missouri, of counsel.

James A. Sprowl, of Chicago, for appellee; William J. LaVelle, and William B. Davenport, both of Chicago, of counsel.

JUDGE FEINBERG delivered the opinion of the court.

We granted defendant a rehearing in order to give further consideration to the question as to whether a partnership existed between plaintiff and defendant in the meat market business conducted by him.

Plaintiff filed her complaint in equity, seeking a decree finding her to be entitled to an undivided one-half interest in the meat market business operated and controlled by defendant, and for an accounting with respect thereto. An answer was filed, and upon a hearing before the chancellor a decree was entered dismissing plaintiff's complaint for want of equity. She prosecutes this appeal from said decree.

Except as to her claim of one-half interest, there is virtually no conflict in the evidence. Plaintiff and defendant were formerly husband and wife. Two children were born of their marriage. While they were living together he was employed in a meat market. His employment ceased because of the bankruptcy of his employer. He asked plaintiff to help him raise money with which to start a meat market. She borrowed $400 on a life insurance policy she had maintained before their marriage. Four hundred dollars was borrowed on the household furniture of the parties, and an additional $200 was borrowed on a life insurance policy of his, in which she was named beneficiary. With this total amount, of which plaintiff contributed 60%, the meat market was started and operated by defendant in the fall of 1932. After the fall of 1932, he moved the meat market a few doors away and continued to operate under the same trade name, "Pete's Market." The new fixtures installed in the new location were paid for in part by credit for the old fixtures in the previous location.

On direct examination, defendant testified he did not use any money from the loan on plaintiff's insur-

ance policy to establish the business, but on cross-examination he admitted that as to this fact, "I can't call her a liar," because he did not remember.

He decided to separate from her on March 31, 1933, and left the family home, taking his personal belongings. They lived separate and apart for several months. Her efforts at reconciliation failed, and after negotiations between them as to their future status, he agreed to go to her attorney's office to discuss a property settlement. They had a meeting at the attorney's office, where a property settlement was agreed upon, the terms being that she was to file a complaint for divorce upon the ground of adultery; that the decree was to provide for her custody of the children and for alimony; and she was to have one-half interest in the meat market business operated by him.

Plaintiff filed her complaint for divorce. He was served with summons. He defaulted, and upon the hearing of the divorce case, though not represented by counsel, he was present in court when plaintiff testified to the terms of the property settlement. She there testified that she and her husband agreed that she was to have an undivided one-half interest in the meat market business operated by defendant, he to give her a bill of sale for such one-half interest, and in addition $300, of which $150 was to be paid in cash upon the entry of the divorce decree, and further payments of $50 on the 15th of November and December 1933, and January 1934, and in addition thereto the sum of $25 a week until the children of the parties, then infants, reached their majority.

He testified in the instant case that he was present on the hearing of the divorce case but did not hear her testimony that she was to have one-half interest in his business, he to give her a bill of sale to evidence it. He did not deny that he heard the balance of her testimony. He denied that he had agreed to give her a one-

313

half interest in the business, in the conference with his wife and her attorney.

The decree entered in the divorce proceeding recited the parties had entered into the property settlement agreement and recited its terms, as testified to by plaintiff. Shortly after the decree was entered, plaintiff left Chicago to make her home in St. Louis, Missouri, and surrendered the household furniture to defendant, upon which, he testified, he paid off the chattel mortgage. The decree was entered October 18, 1933. He admitted he obtained a copy of the decree sometime in 1948. The instant complaint was filed January 26, 1953. The transcript of evidence taken in the divorce case as well as the decree entered therein were received in evidence upon the hearing of the instant case.

Defendant contends that the evidence wholly fails to establish a partnership interest. For the first time in the petition for rehearing, defendant concedes that she is a tenant in common and entitled only to a half interest in the physical property used in the business at the time of the entry of the decree, and concedes that the doctrine of laches cannot be applied to plaintiff either as a tenant in common or as a partner. (Einsweiler v. Einsweiler, 390 Ill. 286, 292.) The divorce decree does not, in the decretal part, award a half interest in the business to plaintiff or order him to execute a bill of sale for such interest. The only witnesses in the instant case were plaintiff and defendant.

■ ■ We think the clear weight of the evidence establishes a partnership interest. Her testimony as to their agreement for the half interest in the business is clearly substantiated by the findings in the divorce decree and in the testimony upon the divorce hearing. Until the petition for rehearing, his denial of such an agreement stood alone. Defendant admits he had a copy of the decree of divorce for over five years. He

314

was fully informed as to its contents. He made no protest against the findings in the decree as to the agreement for a half interest, and made no effort to have the decree modified or reviewed. We must assume from this record that the chancellor in the divorce case considered, in fixing the small amount of support money for plaintiff and the two children, the fact that she was to have a half interest in the business. Under such circumstances, defendant is clearly estopped from denying that plaintiff is entitled to a half interest in the business. The Uniform Partnership Act, Ill. Rev. Stat., Ch. 106½, § 4 (2), provides that "the law of estoppel shall apply under this act." The failure to specifically provide in the decretal part of the divorce decree that plaintiff have a half interest in the business does not affect the probative value of the findings in the decree that such an agreement was entered into between the parties.

Defendant argues that it must be clearly established that the parties intended to form a partnership and to share in the profits, and that there is no evidence that the parties ever discussed partnership or a sharing in the profits.

It is the settled law of this State that as between the parties the existence of a partnership relation is a question of intention to be gathered from all the facts and circumstances. Written articles of agreement are not necessary, for a partnership may exist under a verbal agreement, and circumstances may be sufficient to establish such an agreement. The requisites of a partnership are that the parties have joined together to carry on a trade or venture for their common benefit, each contributing "property or services . . ." Rizzo v. Rizzo, 3 Ill.2d 291, 299.

The Uniform Partnership Act, Ch. 106½, § 6 [Ill. Rev. Stats. 1953, ch. 106½, § 6], provides:

315

: "Definition of partnership. (1) A partnership is an association of two or more persons to carry on as co-owners a business for profit."

Both the property settlement agreement and the decree which approved it gave plaintiff one-half interest in the business. Defendant would limit the meaning of the term "business" to the physical property employed in the business at the time of the decree. We think it is too limited and narrow a construction upon the term "business." "Business" has been described in 12 C. J. S., p. 761, and cases there cited, as a word of flexibility, of large signification and very comprehensive. The term "business" may include not only the physical property and inventory, but, as well, receipts of the business, and receipts would include any profit represented by it.

In In re Friedrichs' Estate, 107 Cal. App. 142, 290 Pac. 54, the Court of Appeals held that a devise in a will of a half interest in the business of the testator meant all the property used by the decedent in the operation of said business, including the real property upon which such business was conducted, personal property located in the buildings thereon, stock on hand, accounts receivable, cash on hand and the commercial account, all used in connection with said business.

Certain it is, that defendant did not, and could not, consistently claim the money advanced by plaintiff to start the business was a loan or a gift by her, since at no time in the intervening years did he pretend that it was a loan. He made no promise or offer to repay it. There is no evidence that it was a gift.

In Mauricau v. Haugen, 387 Ill. 186, 196, it was held that where the wife furnishes the purchase money, and a deed is taken in the name of the husband, a presumption of gift or advancement to the husband from the wife does not arise.

316

Under all the circumstances, it is reasonable to construe defendant's conduct and attitude as implying that plaintiff had invested her money in the business, and he so regarded it, since he made no offer to return her investment to her, but allowed it to remain in the business.

It is not necessary that the parties in the instant case should have employed the term "partnership" or expressly declared themselves to be partners. It is sufficient if the facts and circumstances imply a partnership. Rizzo v. Rizzo, supra.

In Fougner v. First Nat. Bank of Chicago, 141 Ill. 124, 132, the court quoted with approval the statement in Lintner v. Millikin, 47 Ill. 178:

"Parties may become partners without their knowing it, the relation resulting from the terms they have used in the contract or from the nature of the undertaking. They may make a bargain together without knowing it, which creates or involves a partnership, and subjects them to the law of partnership."

■ If the present premises in which defendant operates the business were acquired with any of the partnership funds or profits, a resulting trust in favor of plaintiff should be enforced. Coddington v. Bevan, 315 Ill. 92; Winger v. Chicago City Bank & Trust Co., 394 Ill. 94. That depends upon the proof to be made upon the accounting. Furthermore, the Uniform Partnership Act, Ch. 106½, § 8 (2) [Ill. Rev. Stats. 1953, Ch. 106½, § 8, subd. (2)] provides:

"Unless the contrary intention appears, property acquired with partnership funds is partnership property."

We think the manifest weight of the evidence requires a reversal of this decree. The decree is reversed and the cause remanded with directions to enter a decree declaring plaintiff to be a partner, for account-

317

ing, and for further proceedings in harmony with the views herein expressed.

Reversed and remanded with directions.

KILEY, J., concurs.

LEWE, P. J., took no part.