(No. 31357.—

RICHARD LUTTICKE, Appellee, *vs.* OLGA LUTTICKE, Appellant.

*Opinion filed May 18, 1950.*

EDWARD G. KRANTZ, and DANIEL A. COSTIGAN, both of Chicago, (LATHROP W. HULL, of counsel,) for appellant.

O'SHAUGHNESSY, O'SHAUGHNESSY & LAMBERT, (RICHARD P. LAMBERT, and JOHN J. RYAN, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Richard Lutticke, brought an action in the superior court of Cook County on June 30, 1948, against the defendant, Olga Lutticke, for divorce on the ground of desertion. Plaintiff also alleged that he and defendant owned the real estate where he resided in joint tenancy and that the property was acquired out of his funds with no contribution from defendant, and asked that defendant be ordered to convey her interest in the property to him. On January 28, 1949, defendant brought a separate action in the superior court to partition the same real estate and, a few days later, she filed an answer and counterclaim for separate maintenance in the divorce action. Plaintiff answered defendant's complaint for partition and, by stipulation, the two actions were consolidated.

Upon a hearing of the consolidated causes, the chancellor found that defendant had wilfully deserted and absented herself from plaintiff without reasonable cause for more than one year and entered a decree dissolving the marriage. Thereafter, in a second decree, the chancellor found that plaintiff purchased the property in question with his own funds and improved it with his own funds and labor; that defendant made no contribution to the purchase of the property or the cost of its improvement; that defendant's interest as a joint tenant equitably belonged

to plaintiff, and that defendant did not have sufficient title to the real estate to support her complaint for partition. Defendant was ordered to convey her interest in the property to plaintiff and both her counterclaim for separate maintenance and her complaint for partition were dismissed for the want of equity. A freehold being necessarily involved•in both the divorce proceeding and the action for partition, defendant prosecutes a direct appeal.

At the time of the trial in 1949, plaintiff was sixty-five years of age and defendant was sixty-nine. The parties were married in Chicago in 1939. Defendant had several grown children by a previous marriage. Except for household furniture, defendant brought no money or property to the marriage and was never gainfully employed. Plaintiff, it appears, was steadily employed, first as a draftsman and, later, as an embosser. About 1943, he used $600 of his own funds to purchase a vacant lot in Bridgeview, a suburb of Chicago, and took title with his wife in joint tenancy. In 1944, plaintiff improved the property with a four-room house, with his own money and largely by his own labor. Although the parties moved into the new dwelling before it was completed, defendant did not render any material assistance in finishing the house. This is the property involved in both actions and was the only real estate owned by the parties.

From the very beginning of their marriage, plaintiff and defendant had frequent quarrels with respect to money matters and plaintiff testified that defendant occasionally talked about leaving him. His sister-in-law, Mrs. Erwin Lutticke, who lived next door in Bridgeview, added that defendant often spoke to her about leaving and wanting a divorce. In May, 1947, one of defendant's sons, Otto Wanke, who lived in Chicago with his wife and two small children, the youngest only one month old, asked her to take care of his household because his wife, critically ill, was in a hospital, where she died a few months later. On

May 29, 1947, while plaintiff was away at work, defendant packed some of her clothes and personal articles and moved to her son's house. Plaintiff continued to reside in Bridgeview and, after defendant had been living with her son and taking care of her grandchildren for thirteen months, he filed his complaint for divorce.

As to the circumstances of defendant's departure, Mrs. Erwin Lutticke stated that defendant visited her on May 28, 1947, cried, said she was going to take care of her son's children and was not coming back and told her she could have her drapes, sewing machine and other similar articles and that, on May 29, defendant said goodbye, cried again, and stated it was her duty to care for her grandchildren. About one month later, she visited defendant in Chicago and heard her use her former married name, Mrs. Wanke. The witness related that, when she called attention to this, defendant replied that everyone there knew her by her former married name and she was not going to change it. Mrs. Erwin Lutticke added she saw defendant in Bridgeview one day in July, 1947, and defendant told her that she had returned for some clothing, that she did not want to come back because of her grandchildren, and that she did not want to come back anyhow. On cross-examination, the witness testified that she heard plaintiff tell his wife she could help her son but not for more than two months and that after two months he would find a housekeeper.

Plaintiff testified to the effect that in May, 1947, his wife insisted she had to take care of her son's house; that he consented, in a general way, to her going for a period of not longer than two months; that she left on May 29, 1947, without telling him she was going; that he saw her at a funeral and one other time when she returned for some of her clothes, and that he never asked her to come back nor did he tell her she could not return. On cross-examination, he denied that his wife ever asked him to stay

at her son's house on weekends, and stated that when they sold part of their land to his brother, in August, 1947, she asked for and received $250, one half of the proceeds of the sale.

Defendant testified that her husband told her she could go to her son's home as long as she was needed; that she did not tell him how long she expected to be away because she understood from her son's doctor that her infant grandchild would require special care for six months; that she suggested to her husband that he take some of his meals and spend the weekends with her at her son's house, but he declined; that she informed him she was leaving on May 29, 1947; that when she departed she intended to return to him; that he was home on each of the three or four occasions she returned to Bridgeview for clothes; that one time he put his arms around her and kissed her on the cheeks; that, on later occasions, he was abrupt and, after talking a while, would say he had to leave; that she did not say anything to him about returning, and that he never asked her to come back. Defendant used the word "box" in referring to the house in Bridgeview and admitted she had complained that the rooms were small but denied that she ever said she was leaving permanently or that she offered Mrs. Erwin Lutticke any of her possessions. The only other witnesses were defendant's son, Rudolph Wanke, and his wife. They testified that they stopped at the house in Bridgeview in July, 1947, to visit defendant, and plaintiff told them that she was at Otto Wanke's home and that he had told her to stay there as long as she wanted.

Seeking a reversal of the decree of divorce, defendant asserts she did not desert her husband. Desertion, to constitute legal grounds for divorce, must be wilful and without reasonable cause and must exist for a period of more than one year. (Ill. Rev. Stat. 1949, chap. 40, par. 1; *Hopkins* v. *Hopkins,* 399 Ill. 160.) It is undisputed that the separation continued for more than one year, and, in

this court at least, defendant makes no contention that she had reasonable cause for not living with her husband. She does contend, however, that her absence for the thirteen months in question does not constitute wilful desertion because plaintiff consented to her remaining away indefinitely and never revoked his consent. Separation by mutual consent does not constitute desertion, within the contemplation of the statute, (*Floberg* v. *Floberg*, 358 Ill. 626,) but the chancellor found that defendant wilfully deserted plaintiff and, consequently, the precise question presented for determination is whether the decree is contrary to the evidence. The evidence for plaintiff shows that defendant left with the announced intention of not returning, resumed her former married name and never made any effort to return to her husband. While the testimony as to defendant's intention is conflicting, the chancellor saw and heard the witnesses and his finding that defendant wilfully deserted her husband on May 29, 1949, not being contrary to the weight of the evidence, will not be disturbed. (*Insoda* v. *Insoda*, 400 Ill. 596.) The admitted fact that plaintiff consented to his wife leaving for two months is immaterial, and is ineffective to reduce the period of desertion from the thirteen months charged to less than the statutory prerequisite of one year. Plaintiff's consent to a two months' absence was rendered inoperative by defendant's conduct. Not only did she procure this consent without telling her husband that she would have to be gone for at least six months, but there is competent evidence that defendant, at the time she departed, never intended to return. Plaintiff did not consent to her leaving him forever. The chancellor was fully justified in finding that defendant wilfully deserted plaintiff for more than one year.

Defendant next attacks the decree ordering her to convey her interest in the real estate to plaintiff and dismissing her action for partition. Conceding she did not contribute anything to the purchase or improvement of the property,

defendant contends that, upon the creation of the joint tenancy, she acquired her joint interest as an absolute gift; that, thereafter, she held her interest as her separate property and was entitled to partition, and that plaintiff having failed to show that he had a special equity in her interest, the trial court, acting on the divorce phase of the consolidated causes, erred in divesting her of her interest in the real estate. Where a husband purchases real estate and takes title with his wife in joint tenancy, even though the wife pays no part of the purchase price, there is a presumption of an absolute gift to the wife, which can only be overcome by clear and unmistakable evidence that no gift was intended. (*Moneta* v. *Hoinacki,* 394 Ill. 47; *Spina* v. *Spina,* 372 Ill. 50.) It is equally settled that where a husband and wife are joint tenants, either may maintain a successful action in partition against the other. (*Walker* v. *Walker,* 369 Ill. 627; *Kartun* v. *Kartun,* 347 Ill. 510.) The more recent case of *Stromsen* v. *Stromsen,* 397 Ill. 260, is particularly close on its facts. There, a husband purchased vacant property, taking title in joint tenancy with his wife, and, thereafter, improved the property with a residence. The husband paid the entire purchase price. Three years later, the parties separated and the wife brought an action to partition the property. The circuit court held there was a presumption that the improvement, like the land, was a gift, in accordance with the husband's promise to furnish his wife a home, and entered a decree of partition. Upon appeal, we rejected the husband's contention that he was entitled to reimbursement for the improvement, holding that the evidence was insufficient to overcome the presumption that not only the interest in the lot, but the improvement, was intended as a gift, and affirmed the decree.

In the instant case, the plaintiff husband admits there is no evidence in the record to overcome the presumption of a gift, nor does he contend he has any special interest

in the residence, as distinguished from the land. He further concedes that, ordinarily, a wife is entitled to the partition of jointly owned real estate against her husband, regardless of whether she acquired her interest by purchase or by gift. His sole contention is that defendant's joint interest in the real estate, acquired by her as a gift, equitably belongs to him because he furnished the consideration for it out of his own funds.

Section 17 of the Divorce Act (Ill. Rev. Stat. 1949, chap. 40, par. 18,) ordains: "Whenever a divorce is granted, if it shall appear to the court that either party holds the title to property equitably belonging to the other, the court may compel conveyance thereof to be made to the party entitled to the same, upon such terms as it shall deem equitable." Contrary to the contention advanced, the mere circumstance that a husband purchased a joint interest in real estate as a gift for his wife does not, in the absence of anything more, make him the equitable owner of her interest. Property voluntarily conveyed by a husband to his wife, without fraud or coercion, becomes the wife's separate property and, notwithstanding the husband purchased the property with his own money, the wife may hold the property against him. (*Arliskas* v. *Arliskas,* 343 Ill. 112.) As indicated, even though the wife has acquired title to a joint interest in real estate as a gift from her husband, she is entitled to partition against him. (*Stromsen* v. *Stromsen,* 397 Ill. 260.) Although plaintiff seeks to distinguish the *Stromsen case* on the ground that it was purely a partition action and did not involve an action for divorce, the fact remains that the title in question is one and the same in both proceedings. Defendant's title did not undergo any metamorphosis by the consolidation of her action for partition with her husband's action for divorce. Her title to a joint interest acquired by gift, being sufficient to authorize a decree of partition, was equally effective in the divorce proceeding to defeat the

claim made by plaintiff that he was the equitable owner of her interest simply because he furnished the consideration for the gift.

The decree for divorce is affirmed; the second decree, to the extent it orders defendant to convey her interest in the real estate to plaintiff and dismisses defendant's complaint for partition, is reversed and the cause remanded to the superior court, with directions to proceed in conformity with the views expressed in this opinion.

*Affirmed in part, and reversed in part and remanded, with directions.*